UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS S., <br><br>                    Plaintiff, <br><br>  v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>                    Defendant. | CASE NO. C21-05213-MAT <br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

Also before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint in Part (Dkt. 7) (Motion). Plaintiff opposes the Motion (Dkt. 9). For the reasons stated herein, the Motion is GRANTED. Plaintiff's allegations arising from a constitutional challenge in his Complaint are DISMISSED.

ORDER
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1959.[1] Plaintiff has a college education and previously worked as a police sergeant. AR 28, 46. Plaintiff filed an application for Disability Insurance Benefits (DIB) on March 16, 2018, alleging disability beginning October 30, 2017. AR 21. The application was denied at the initial level and on reconsideration. On November 19, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). AR 34–83. On February 5, 2020, the ALJ issued a decision finding Plaintiff not disabled. AR 21–29. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on January 25, 2021, (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 2

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 23.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: osteoarthritis; recurrent deep vein thrombosis (DVT) of bilateral lower extremities; history of Factor V Leiden mutation; essential hypertension, and obesity. AR 23. The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: bilateral hearing gloss and Bell's palsy. AR 24.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 24.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> The claimant is able to perform work that does not require climbing ladders, ropes, or scaffolds. The claimant is able to occasionally climb ramps and stairs and occasionally stoop and crouch. The claimant is able to perform work that does not require kneeling or crawling. The claimant is able to perform work that allows him to avoid concentrated exposure to extreme cold and vibration and even moderate exposure to hazards as defined by DOT. The claimant would need a sit/stand option defined as the ability to change position after 30 to 60 minutes for 3 to 5 minutes while remaining on task.

AR 25. With that assessment, the ALJ found Plaintiff able to perform past relevant work as a police sergeant. AR 28–30. Because the ALJ found Plaintiff able to perform past relevant work, the ALJ did not proceed to step five of the sequential analysis.

I. **DEFENDANT'S MOTION TO DISMISS IN PART**

In his Complaint, Plaintiff alleges that, pursuant to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the Commissioner's office is unconstitutional because "the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control." Dkt. 1, at 2 ¶9. Accordingly, Plaintiff alleges that the ALJ's are not constitutionally appointed and "Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ." *Id.* The Complaint contains no other allegations pertinent to Plaintiff's constitutional claim.

The Commissioner argues that Plaintiff lacks standing to bring this claim. Dkt. 7. To establish Article II standing, a plaintiff must show that it has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations and internal quotation marks omitted). For purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to the 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021); *see also Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of . . . .").

Plaintiff argues in briefing that "flaws in the Commissioner's authority are flaws in the ALJ's authority." Dkt. 9, at 2; *see also id.* at 6 ("Plaintiff has personally been subjected to a denial of benefits made under the authority of an official whose office is unconstitutional."). Plaintiff's

ORDER
PAGE - 4

argument, however, has been rejected by the Supreme Court. In *Collins*, the Supreme Court held that the existence of an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1787; *see also id.* at 1788 n.24 ("[T]hat holding [in *Seila Law*] on standing does not mean that actions taken by such an officer [subject to an unconstitutional removal restriction] are void *ab initio* and must be undone."). Indeed, in *Seila Law*, the Supreme Court held that an unconstitutional removal provision does not *per se* render the whole underlying act void. *Id.* at 2211; *see also Collins*, 141 S. Ct. at 1787 n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ."); *id.* at 1082 (Kagan, J., concurring in part and concurring in the judgment) ("[G]iven the majority's remedial analysis, I doubt the mass of [Social Security Administration] decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference . . . ."). Here, Plaintiff alleges that the ALJ's appointment is unconstitutional yet does not allege facts in his Complaint that his injury— the denial of disability benefits—is traceable to the constitutional separation of powers violation. Dkt. 1, at 2 ¶9. Nor does Plaintiff argue in briefing that his injury in fact is traceable to the constitutional violation. Dkt. 9, at 2–4. Because Plaintiff has not shown that he experienced compensable harm that can be traced to the constitutional defect, Plaintiff has not demonstrated traceability and his constitutional claim fails for lack of standing. *See Decker Coal Co.*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").

ORDER
PAGE - 5

The Commissioner further argues that "Plaintiff cannot properly challenge the credentials of the ALJ who decided his claim" because the ALJ was appointed by then-Acting Commissioner Nancy Berryhill, "who did not have the benefit of the statutory removal protections that would be the only possible basis for a constitutional claim under *Seila Law*." Dkt. 7, at 8. In *Collins*, the Supreme Court held that "[w]hen a statute does not limit the President's power to remove an agency head, we generally presume the officer serves at the President's pleasure." *Collins*, 141 S. Ct. at 1783. Here, 42 U.S.C. 902(b)(4) provides that the presidentially appointed Deputy Commissioner or another office of the Government designated by the President shall serve as Acting Commissioner "during the absence of disability of the Commissioner. 42 U.S.C. § 902(b)(4). Neither provision governing the Deputy Commissioner or another presidentially designated Acting Commissioner contain removal restrictions. The appointment of the ALJ who decided Plaintiff's claim was ratified in July 2018 by Acting Commissioner Berryhill.[2] Dkt. 7, at 9. Accordingly, the ALJ who adjudicated Plaintiff's claim was not subject to a constitutionally defective removal restriction. Further, to the extent that Plaintiff raises an appointment clause challenge, the Court concludes there is no appointments clause violation in this case, and the ALJ who issued the decision here was properly appointed.

Because Plaintiff has failed to show traceability in order to establish standing, the Court

---

[2] Plaintiff nevertheless argues that Berryhill's service as Acting Commissioner was invalid at the time that the ALJ's appointment was ratified because she served longer than 210 from the beginning of the vacancy. Dkt. 9, at 5 (citing the Federal Vacancy Reform Act (FVRA), 5 U.S.C. § 3346). The Court finds Plaintiff's argument to be without merit. The FVRA contains a "spring-back" provision that enabled Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018. *See* 5 U.S.C. 3346(a)(2) (once a first or second nomination for the office is submitted to the Senate, an acting officer may serve from the date of such nomination for the period the nomination is pending in the Senate); *see also* 23 O.L.C. 60, 68 (1999) ("The Vacancies Reform Act incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submission of a nomination, even if the 210-day period expired before that nomination was submitted.") Therefore, Acting Commissioner Berryhill's service was not in violation of the FVRA at the time that the ALJ was appointed.

ORDER
PAGE - 6

need not address the issue of redressability.

## II. PLAINTIFF'S APPEAL OF THE DENIAL OF SOCIAL SECURITY BENEFITS

Plaintiff assigns the following errors on appeal: (1) the ALJ's RFC determination is not supported by substantial evidence because she failed to properly evaluate the opinion of treating physician Jorge Chaves, M.D., in accordance with the regulations, and (2) the ALJ failed to consider Plaintiff's subjective complaints in accordance with the proper legal standard. Plaintiff requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

### 1. Medical Opinions

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[3] 20 C.F.R. § 404.1520c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at § 404.1520c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (applying the substantial evidence standard under the 2017 regulations); *Matos v. Comm'r of Soc. Sec. Admin.*, No. 21-11764, 2022

---

[3] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

WL 97144, at *4 (11th Cir. January 10, 2022) (same); *Zhu v. Comm'r of Soc. Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (same). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

    A.  <u>Dr. Jorge Chaves, M.D.</u>

Dr. Chaves evaluated Plaintiff on February 13, 2018, and diagnosed Plaintiff with Factor V Leiden and DVT with symptoms of pain in lower extremities and swelling of limbs. AR 524. Based on an assessment of Plaintiff's measured capacity, Dr. Chaves assessed that Plaintiff could occasionally (*i.e.*, 0% to 33%) bend, climb, reach, kneel, squat, and crawl, and could push, pull, and lift five pounds. AR 525. Dr. Chaves opined that Plaintiff "cannot perform any activities," would be "unable to perform any work activities due to hig [sic] risk of hemorrhaging or internal bleeding," and has an "increased risk of severe hemorrhage or internal bleeding should he undergo trauma" that delays his recovery. AR 525. Finally, Dr. Chaves opined that Plaintiff is permanently impaired and unable to return to work. AR 525.

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. § 404.1520c(a)–(b). The ALJ found Dr. Chaves' opinion not persuasive. AR 28. The ALJ found that "[w]hile the medical evidence of record as discussed above in evaluating the DDS opinion indicates that claimant has some functional limitations, it does not establish that the claimant is unable to do all activities." AR 28. The ALJ further found that the doctor's opinion "is also inconsistent with the claimant's own reported activity level of working part-time as a driving instructor and local high school coach." AR 28.

Plaintiff argues that the ALJ failed to evaluate the supportability of Dr. Chaves' opinion pursuant to the regulations. Dkt. 18, at 4–6. Under the supportability factor, the ALJ considers how

ORDER
PAGE - 8

"relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" in determining that opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(1). Here, Dr. Chaves noted Plaintiff's diagnoses of Factor V Leiden and DVT, symptoms of lower extremity pain and swelling of limbs, comorbid conditions of a history of Factor V Leiden and hypercoagulable state, and objective findings of vascular duplex. AR 524. Further, Dr. Chaves noted that his assessment was based on Plaintiff's measured capacity, that Plaintiff is currently on blood thinner medication, and that his opinion that Plaintiff was unable to perform any work activities was due to Plaintiff's high risk of hemorrhaging or internal bleeding. AR 525. The ALJ, however, failed to articulate any consideration of the objective evidence and supporting explanations provided by Dr. Chaves in evaluating the persuasiveness of the doctor's opinion pursuant to the supportability factor. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."). This error was harmful because it resulted in an RFC determination that did not account for Dr. Chaves' assessed functional limitations.

Plaintiff further argues that the ALJ failed to properly evaluate the consistency factor of Dr. Chaves' opinion by "fail[ing] to identify specific evidence and discuss how that evidence contradicted Dr. Chaves' opined limitations." Dkt. 18, at 6. Under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . .will be." 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ found that "the medical evidence of record as discussed above in evaluating the DDS opinion . . . does not establish that the claimant is unable to do all activities." AR 28. Although the ALJ found a conflict between the "DDS opinion" and Dr. Chaves' opinion, the ALJ failed to address whether Dr. Chaves' opinion is more or less consistent "with the evidence

from other medical sources and nonmedical sources in the claim" and why Dr. Chaves' opinion was more or less persuasive pursuant to the consistency factor. *See* 20 C.F.R. § 404.1520c(c)(2). Further, the ALJ failed to identify what "DDS opinion" the ALJ found conflicted with Dr. Chaves' opinion.[4] The Commissioner, in briefing, suggests that the ALJ was referring to the opinion of Dr. Michael Johnson, M.D. Dkt. 19, at 7. However, because the ALJ failed to identify which opinion was the "DDS opinion" that the ALJ determined conflicted with Dr. Chaves' opinion, the Court cannot review whether the ALJ properly rejected Dr. Chaves' opinion by finding it inconsistent or in conflict with another medical opinion of record. *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *see also Thomas*, 278 F.3d at 956–57 ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'" (citation omitted)). Therefore, the ALJ failed to adequately articulate the consistency factor when evaluating the persuasiveness of Dr. Chaves' opinion pursuant to the regulatory factors. *See* 20 C.F.R. § 404.1520c(b)(2). This error was harmful because it resulted in an RFC determination that did not account for Dr. Chaves' assessed functional limitations.

Plaintiff also alleges that the ALJ erred by finding Dr. Chaves' opinion inconsistent with Plaintiff's activity level of working part-time as a driving instructor and local high school coach. Dkt. 18, at 7. An ALJ may properly reject a medical opinion that is inconsistent with the claimant's level of activity. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff testified at

---

[4] The ALJ identifies three assessments from the "Disability Determination Services (DDS) medical consultants": the assessments of Dr. Drew Stevick, M.D., Dr. Desmond Tuason, M.D., and Dr. Leonard Simpson, M.D. AR 27.

ORDER
PAGE - 10

the hearing that he does classroom instruction for 911 driving school for 2 ½ hours a day, 3 days a week. AR 48. Plaintiff further testified that he keeps score for the boys' basketball team in the University Place School District. AR 49. These activities, however, are not reasonably inconsistent with Dr. Chaves' opinion. Dr. Chaves opined that Plaintiff was unable to do any activities or do any work activities due to a high risk of hemorrhaging or internal bleeding. AR 525. Evidence that Plaintiff has engaged in limited work activity as a school instructor and basketball scorekeeper does not reasonably undermine a medical opinion that Plaintiff's high risk of hemorrhaging or internal bleeding restricts and limits his ability to perform any activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."). Further, Plaintiff testified that he works as a school instructor for 2 ½ hours a day for only 3 days a week and that he gets paid for two hours a day when he does scorekeeping (AR 48–50)—the evidence does not indicate that Plaintiff could perform similar activities for a longer period or full-time, sustained basis. *See Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *see also Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That [plaintiff] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (a claimant's ability to engage in physical activities that "do not consume a *substantial part* of [claimant's] day" does not detract from a claimant's overall disability (emphasis in original)). Therefore, the ALJ's rejection of Dr. Chaves' opinion by finding it inconsistent with Plaintiff's level of activity is not supported by substantial evidence.

ORDER
PAGE - 11

**2. Subjective Testimony**

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[5] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that he is unable to work because of his Factor V Leiden and DVT impairments, blood thinning medication, his October 2017 knee injury, and a DVT that formed behind his knee. AR 241. Plaintiff alleges that he cannot get surgery for his knee due to the blood clot, that he is in pain with every step he takes, and that he cannot take any pain medication due to the blood thinners. AR 241. Plaintiff alleges that his knee pain affects his ability to perform most physical activities, that the DVT affects his ability to stand, and that his impairments also affect his ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs. AR 241, 235, 240. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause

---

[5] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 26.

Plaintiff argues that the ALJ erred by finding Plaintiff's testimony inconsistent with evidence of Plaintiff's part-time work at a driving school. Dkt. 18, at 11 (citing AR 27). An ALJ may consider daily activities in evaluating a claimant's testimony regarding his physical limitations and the severity of his symptoms. *Fair*, 885 F.2d at 603 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain."). Here, as discussed above, the evidence does not show that Plaintiff spends a substantial part of his day engaged in his activity as a part-time driving instructor; rather, Plaintiff testified that he works as a driving instructor for 2 ½ hours per day, 3 days a week. *See Vertigan*, 260 F.3d at 1050 (a claimant's ability to engage in physical activities that "do not consume a *substantial part* of [claimant's] day" does not detract from a claimant's overall disability (emphasis in original)). Further, the evidence does not show that Plaintiff's limited activity working as a driving instructor, which Plaintiff testified primarily involved classroom instruction (AR 48), was transferrable to a full-time, sustained work schedule or that Plaintiff would be able to engage in a similar or more strenuous activity for a longer period given Plaintiff's pain symptoms. *See Fair*, 885 F.2d at 603. Therefore, the ALJ erred by rejecting Plaintiff's symptom testimony by finding it inconsistent with evidence of Plaintiff working part-time as a driving instructor.

Plaintiff argues that the ALJ erred by finding Plaintiff's testimony inconsistent with evidence of Plaintiff having worked with his conditions since 2015. Dkt. 18, at 11 (citing AR 27).

ORDER
PAGE - 13

An ALJ may discount a claimant's allegations of a disabling condition when the claimant worked in the past with the same condition, and the condition remained constant as of the alleged onset date. *Gregory v. Bowen*, 844 F.2d 664, 666–67 (9th Cir. 1988). Here, the evidence does not show that Plaintiff had the same condition without significant worsening at the alleged onset date. Although Plaintiff testified that he was put on blood thinner in 2015 (AR 58), Plaintiff alleged a disability onset date of October 30, 2017. AR 21, 184. Plaintiff sustained a knee injury on October 30, 2017, and in November 2017 Plaintiff was treated for acute thrombosis in his left lower extremity with swelling the left calf. AR 241, 327, 372–77. Further, Plaintiff's attending physicians stated that they recommended that Plaintiff stop working in November 2017. AR 524, 526. Because the evidence shows that Plaintiff's impairments worsened as of the alleged onset date, the ALJ erred by discounting Plaintiff's symptom testimony by finding his testimony inconsistent with evidence of Plaintiff having worked with his condition in the past.

Finally, Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony based on evidence that Plaintiff is able to walk two miles and use an exercise bike. Dkt. 18, at 12. An ALJ may discount testimony where it is inconsistent with evidence of a claimant's daily activities. *Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021). Plaintiff testified that he could walk for two miles very slowly but that he "push[es] through the pain," would experience tremendous swelling, and would need to raise his feet. AR 69–70. Similarly, Plaintiff testified that he is able to use a stationary bike at the gym if he positions his knee in the right position and does not overextend it but that he "pushe[s] through a lot of that." AR 62–63. Accordingly, although Plaintiff testified that he is able to walk for two miles and use a stationary bike, Plaintiff testified that he experiences pain when doing these activities. Plaintiff's testimony regarding his activities is consistent with Plaintiff's allegations that he experiences pain when doing physical activities.

ORDER
PAGE - 14

Further, these activities "are not necessarily transferable to the work setting with regard to the impact of pain." *See Vertigan*, 260 F.3d at 1050 ("A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean that she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." (emphasis in original)). Because Plaintiff testified that he experiences pain when walking and using a stationary bike, the ALJ erred by discounting Plaintiff's pain testimony based on evidence of Plaintiff's activities.

For these reasons, the ALJ erred by discounting Plaintiff's symptom testimony. This error was harmful because it resulted in an RFC determination that did not account for all of Plaintiff's functional limitations.

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceeding.

IT IS FURTHER ORDRED that the Commissioner's Motion to Dismiss in Part (Dkt. 7) is GRANTED. Plaintiff's allegations arising from a constitutional challenge in his Complaint are DISMISSED.

DATED this 28th day of January, 2022.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 15